FRED LECLERC
*vs.*
ROMEO GILBERT AND
THE AETNA CASUALTY & SURETY COMPANY

Kennebec.    March 22, 1957.

*Jerome G. Daviau,* for plaintiff.

*C. Alvin Jagels,*
*Locke, Campbell, Reid & Hebert,* for defendants.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

SULLIVAN, J. The petitioner-employee, Fred Leclerc, prosecutes exceptions to the *pro forma* decree of a Superior Court Justice sustaining the findings of the Industrial Accident Commission upon a petition to determine the extent of permanent impairment.

On November 3, A. D. 1955 the petitioner sustained a compensable injury to his left ankle. That same month a written memorandum of agreement was made by the petitioner and the respondents for the payment to Leclerc by them of compensation "during present period of temporary total incapacity beginning November 11, 1955." The writing expressly acknowledged that the period of incapacity commenced November 4, 1955. On November 22, 1955 the Commissioner of Labor and Industry approved the transaction.

On September 22, A. D. 1956 the parties agreed by written memorandum for compensation "during the present period of temporary partial incapacity beginning September 17, 1956." October 4, 1956 the Commissioner of Labor and Industry approved.

Each agreement contained this delimitation: "Compensation for permanent impairment not considered in this agreement."

On August 2, A. D. 1956 Leclerc filed with the Industrial Accident Commission his petition, dated July 27, A. D. 1956,

to have determined the extent of his permanent impairment. The respondents answered with a general denial. On November 27, A. D. 1956 the Commission held a hearing and on November 28th, made these findings:

"Injury November 3, 1955, to left foot

Permanent Impairment found by Commission: 20%

Employee therefore entitled to specific compensation for 25 weeks beginning November 3, 1955, at $27.00 per week. Any compensation already paid because of said injury for actual incapacity to work during said period or as specific compensation to be credited toward aforesaid amount hereby ordered paid by above-named employer or insurance carrier."

On December 19, A. D. 1956 under the obligatory statute a Justice of the Superior Court formally approved such findings.

On January 3, A. D. 1957 the petitioner filed five exceptions to the decree of the justice. The exceptions are reducible to two specifications of attack:

1. The decree is legally exceptionable in that no finding of fact had been made in the decision of the Industrial Accident Commission asserting positively the specific date on which permanent impairment commenced but payments were scheduled retroactively from the date of the injury in lieu of such a finding and for want of one.

2. The weekly payments decreed should be additional to payments previously accrued and paid under the two, approved agreements for compensation and payments made under those agreements should not have been allowed to the respondents as a credit toward payments to be made in accordance with the decree.

The findings of the Industrial Accident Commission of November 28, 1956 recite that a hearing had been had, that there had been an injury to the petitioner's left foot on November 3, 1955, that permanent impairment of 20% had resulted and that the petitioner was entitled to specific compensation for 25 weeks beginning November 3, 1955. These findings are of fact. *Foley* v. *Dana Warp Mills,* 122 Me. 563, 119 A. 805.

It must be conceded that no finding of fact was made verbatim or in recessed or isolable words saying permanent impairment began on November 3, 1955. The technique employed lacked that direct address to the point and that absolute precision. Yet sufficient detail was recorded to necessitate of the reader only a minimum exertion of his deductive process to perceive a finding by the Commission that permanent impairment commenced on November 3, 1955. The shortcoming under the particular circumstances of this case was trivial and the sacrifice of form is of such fine degree that we may sensibly say it is expendable although not completely desirable.

> "- - - - - The ultimate findings and conclusions of the referee are, in substance, correctly reported by Commissioner Scott, and the mere fact that each finding of the referee is not formally labeled by him as a finding of fact or conclusion of law in no way changes their actual character; again, where a series of facts are found, showing, in themselves, that an employé was injured upon the premises of his employer (as in the present case), the lack of a formally stated conclusion that the injury so occurred is not fatal to the referee's adjudication."

*Dainty* v. *Jones & Laughlin Steel Co.,* 263 Pa. 109, 106 Atl. 194.

> "In a proceeding under the Oklahoma Compensation Act, the employer contended that the Industrial Commission failed to designate in their order for the payment of certain medical bills, the doc-

tor entitled thereto, and whether or not the charges thereon were reasonable; and that the award relative to the medical bill should be remanded and the commission directed to correct the order for the medical bill and state therein whether or not the charge made for services rendered, was, in their opinion, reasonable. The court, in denying that contention, said: 'The fact that hearing was had before the commission upon the reasonableness of the medical bill, the order of the commission made thereon 'that all medical bills be paid' was a sufficient finding and order of everything necessary to be found to sustain the same, and was a finding as to the reasonableness of the bill upon which the hearing was had.' Raymond Concrete Pile Co. v. Francis (Okl.), 16 P. (2d) 235 (Nov. 1932)."

Workmen's Compensation Law, Schneider, Vol. 3, Supplement, Page 262.

Determining, as we feel we must, that a finding of permanent impairment commencing on November 3, 1955, was thus unequivocably, howbeit argumentatively, expressed by the Commission in its decision, the finding as an affair of fact cannot be questioned in this case since no report of any evidence is included in the record. *Girouard's Case,* 145 Me. 62, 69; *Bickford* v. *Bragdon,* 149 Me. 324, 332.

In as much as permanent impairment was fixed as of November 3, 1955, double or concurrent compensation was not available to the petitioner upon the facts of this particular case.

In *Phillips' Case,* 123 Me. 501 an injury had occurred, April 5th, 1922. By an open-end agreement of April 28, 1922 compensation was paid from and after April 12, 1922. On August 14th, 1922 there was an amputation. This court held that compensation for the loss by amputation, for 83 weeks began as of August 14th, but that double or concurrent compensation was not allowable under both the agreement of April 28, 1922 and the amputation award, for the

period from the amputation on August 14th, to November 2, 1922, the date of the agreed statement of facts upon which the case was presented to the Law Court.

In *Maxwell's Case,* 119 Me. 504, 508 is this paragraph:

"The chairman, however, heard the case, but based his decision on an entirely different ground, viz: That the loss, as he puts it, of 'nearly three-fourths of the distal phalange, constitutes the loss of the entire phalange for all practical or useful purposes,' and held that the petitioner had lost the phalange of his finger within the meaning of Section 16 of the Act and was entitled to specific compensation therein provided, *less the sums he had already received."* (Emphasis, ours.)

The italicized words were not at all essential to the decision rendered by the court. They are quoted here merely for any significance they may negatively afford as manifesting that the court was at no pains to challenge or question them.

In *Martin's Case,* 125 Me. 221, 222 is this passage:

"The full commission made the finding that usefulness and physical functions of the eye were totally and permanently impaired and ordered compensation appropriate to statutory provision, *toward which the temporary-disability payments* should count. - - - - - - - - - -" (Emphasis, supplied.)

Again, the italicized clause is extraneous to the decision. It is noted here for any importance it may deserve from its having failed to provoke any court comment. There was no perceptible arching of the forensic eyebrows.

In *Estabrook* v. *Steward Read Co.,* 129 Me. 178, the accident had occurred October 14, 1924. On November 4, 1924 a memorandum of agreement was made with requisite approval, for payment of compensation "during present disability," beginning October 21, 1924. Compensation was accordingly paid. On October 14, 1928 the injured employee

died. June 18, 1929 the employee's widow filed a petition to have determined the extent of permanent impairment and for an apt award of compensation. On December 20, 1929 the Commission found the percentage of permanent impairment to have been 95% and that the employer must pay the employee's widow compensation for the specific period of 285 weeks beginning October 21, 1924, *less the number of weeks during which compensation had been paid to the employee before his death and to his widow thereafter.* (Emphasis, supplied.) This court confirmed the Commission's findings crediting payments of compensation made under the agreement of November 4, 1924, against payments ordered to be paid for the specific period of 285 weeks. Concurrent or double compensation was thus denied under circumstances very comparable with those in the instant case.

*Exceptions overruled.*