**Edwin F. HARRINGTON**

v.

**GOODWIN'S CHEVROLET, INC. and
Universal Underwriters
Insurance Company.**

Supreme Judicial Court of Maine.

April 18, 1979.

Hart, Stinson & Lupton, P. A. by Ronald Lupton (orally), Ronald A. Hart, Bath, for plaintiff.

Robinson & Kriger by Sarah M. Allison (orally), Portland, for defendants.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

The employer, Goodwin's Chevrolet, Inc., brings this appeal from the *pro forma* decree of the Superior Court, Sagadahoc County, affirming the decision of the Industrial Accident Commission,[1] dated June 26, 1978, which granted the employee's petition for award of compensation. The central issue on this appeal is whether the Commission's finding of total incapacity due to the employee's inability to find suitable work had support in this record.

Upon this issue, we sustain the appeal.

Edwin Harrington, the employee, had worked as an automobile mechanic for Goodwin's Chevrolet, Inc. for approximately six years, when in April, 1977, he began to experience a serious problem with dermatitis on his legs. Home remedies failing to cure the problem, he consulted a physician on May 5, 1977.

Harrington's condition was diagnosed as contact dermatitis caused by the oil and grease which the employee encountered in his work as a mechanic. The sudden eruption of this allergic reaction after nearly thirty years as an automobile mechanic was explained by the treating physician as a common pattern in which a dermatic condition results from long repeated exposure. The condition cleared up through treatment by June 15, 1977.

The employee was advised by his physician to look for other employment. He has sought vocational rehabilitation toward that end. He has no training other than as a mechanic and has only an eighth grade education. He has had approximately thirty years experience as an automobile mechanic.

In seeking other employment he applied for a position as a truck driver but was rejected because he did not have the necessary operator's license. He also inquired concerning a job as an electrician, but was rejected because of his lack of training in that field. So far as the record discloses, this was the full extent of the employee's work search.

■ Initially, the employer contests the Commission's finding that the cause of the dermatic condition was the oil or grease contacted during his employment. The employer points to the report of Donald P. Cole, M.D., a dermatologist, in which the physician expressed an opinion that contact dermatitis was not indicated. In contrast, the employee's treating physician, Joseph

---

1. Effective July 6, 1978, the name of the Industrial Accident Commission was changed to the Workers' Compensation Commission. P.L. 1978, ch. 612.

Mendes, M.D., testified to his studied conclusion that oil and grease were the most likely cause of this dermatitis. The Commission's finding was thus supported by competent and credible evidence and is therefore final. *See Coty v. Town of Millinocket,* Me., 393 A.2d 156, 157 (1978); *Bolduc v. Pioneer Plastics Corp.,* Me., 302 A.2d 577, 581 (1973).

 As an assignment of error, the employer seizes on one element of the Commissioner's statement of his findings which state that Dr. Cole's report was, for practical purposes, disregarded.[2] While we certainly agree with the employer that the Commissioner has the duty to consider all competent evidence presented to him, *see, e. g., Crosby v. Grandview Nursing Home,* Me., 290 A.2d 375, 379 (1972); *Cote v. Allied Chemical Coatings, Inc.,* Me., 249 A.2d 528, 530 (1969); *Houle v. Tondreau,* 148 Me. 189, 193–94, 91 A.2d 481, 483 (1952), this statement in the findings, taken in context, suggests that the Commissioner did in fact consider Dr. Cole's report, but found it of little probative value because it was based on an examination of the employee conducted after the dermatitis had largely disappeared. While the Commissioner's choice of language may not have been the best, we conclude that the Commissioner did consider this evidence and only "disregarded it for practical purposes" after concluding that the opinion of Dr. Mendes, the treating physician, carried probative value superior to that of the written report of this examining physician. There was no error here.

The employer next contends that the employee has not shown he has a continuing physical disability nor that he has made a reasonable work search.

 The first contention may be easily rejected. The employee's physician stated that his patient could not "return to any work where there is contact with oil or grease involved." This conclusion was adopted by the Commission as valid. The employee's allergic condition was properly found to have disabled him from performing certain types of work and to entitle him to compensation.

We move on to the employer's third issue, that the employee has failed to show that he has made a reasonable search for work. This contention has considerably more merit.

 The employee was awarded compensation for total incapacity. Such an award must be based upon total medical incapacity or partial medical incapacity coupled with an inability to find suitable work. *Theriault v. Walsh Const. Co.,* Me., 389 A.2d 317, 319 (1978); *Bowen v. Maplewood Packing Co.,* Me., 366 A.2d 1116, 1119 (1976). In this case the finding of total incapacity must necessarily have been premised upon the latter basis for the period following the employee's recovery from the immediate physical effects of the dermatitis, which disappeared by June 15, 1977.

 To support a finding on this basis it was incumbent on the employee to show:

. . . that he has engaged in a good faith effort to obtain work within the tolerance of his physical condition, and . . . that he failed in his effort, either because employers in his community would not hire people with such a limited capacity to do the type of work within his tolerance, or because there was no reasonably stable market in his community for that restricted work of which he was capable.

*Id.*

 The record, nevertheless, discloses attempts by the employee to obtain work on only two occasions. On these occasions he was not hired because he was not properly

---

2. As relevant, the Commission's findings and order read:

Because of the statement contained in Employer's *Exhibit # 1* ". . . in view of no active lesions being present, a specific dermatologic diagnosis, both in regard to disease that is connected [sic] to his occupation is impossible; patch testing without more historical evidence would probably be a waste of time. The best test to determine the occupational relationship is to return him to his work."—[sic] is, for practical purposes, disregarded as being in derogation of any testimony offered by Dr. Joseph Mendes.

licensed or was otherwise not qualified for the job. On neither occasion was he refused employment due to his physical limitation. He made no other showing that his community lacked a reasonably stable market for work within his physical ability.

With respect to the employee's efforts to obtain employment, the Commission stated:

Evidence was also offered by the employee as to his limited education and work experience as well as his efforts to obtain work. This is believed to be in good faith and sufficient under the law to justify his position in remaining out of work.

The employee argues in support of this conclusion that he has shown his total incapacity to perform work "in accordance with his education, training and background generally." This argument is wide of the mark, however, since it is an inability to obtain work in any field which warrants an award for total incapacity. Incapacity to do the same kind of work as before the injury is not the test. *Theriault v. Walsh Const. Co., supra,* at 320.

■ On the record before us we cannot conclude that the employee has met the bipartite burden of proof necessary to show (a) total incapacity as a result of partial medical incapacity combined with (b) inability to secure suitable work. *Gaddis v. Georgia-Pacific Corp.,* Me., 382 A.2d 1045, 1046 (1978). He has failed to show either that he engaged in a good faith work search or that the search failed due to employer resistance to hiring persons with his qualificational limitations or due to the general unavailability of suitable work.

■ The question of a good faith effort to find work is a mixed question of law and fact. Findings that actual efforts were made to obtain work are factual; but the evaluation of the reasonableness of those efforts is a mixture of law and fact requiring an examination of the reasonableness and legality of the Commission's ultimate conclusion with deference to its relevant expertise. *Theriault v. Walsh Const. Co., supra,* at 320; *Jacobsky v. D'Alfonso and Sons, Inc.,* Me., 358 A.2d 511, 515 (1976). Several factors must be considered in our evaluation, including the frequency and persistence of the effort and the type and appropriateness of the employment sought. *Bowen v. Maplewood Packing Co., supra,* at 1119.

The record before us reveals but one qualificational limitation, the inability to work in constant contact with oil and grease. It appears that the employee undertook to obtain employment on only two occasions. The type of work sought was inappropriate since he was without any training as an electrician and lacked the necessary license for driving a truck. The frequency and persistence of the employee's search efforts were certainly low. The record contains no evidence of the conditions of the local job market. *See Crocker v. Eastland Woolen Mill, Inc.,* Me., 392 A.2d 32, 36, n. 8 (1978). In light of the particular qualificational limitation of this employee, a reasonable work search has not been shown.

Furthermore, the record is barren of any evidence showing that he failed to obtain employment due to his physical limitations or due to the fact that suitable work was unavailable in his community. The failure of this employee's work search was never shown to have resulted from the refusal of employers in his community to hire persons with his limited capacity or from the lack of a reasonably stable market in his community for the restricted work of which he was able.

The employee has failed to demonstrate his total incapacity beyond June 15, 1977. Prior to that date he suffered from a physical disability sufficient to create total medical incapacity. Absent evidence of a good faith work search following the employee's physical recovery, the record before us fails to support a conclusion of total incapacity due to partial medical incapacity coupled with an inability to find suitable work.

The *pro forma* decree, therefore, must be vacated insofar as it directs payment of compensation for total incapacity beyond a period ending June 15, 1977. The award of compensation for total incapacity for the period from May 3, 1977 to June 15, 1977 is sustained.

**362**

The entry is:

Appeal denied in part and sustained in part.

*Pro forma* decree modified by vacating so much thereof as directs payment of compensation for total incapacity after June 15, 1977.

Remanded to the Superior Court for remand, in turn, to the Workers' Compensation Commission for further proceedings consistent with the opinion herein.

It is further ordered that the employer pay the employee $550 for his counsel fees plus his actual out-of-pocket expenses on this appeal.

WERNICK, J., did not sit.